IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 13-00021-SOM-2 |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT'S |
| | ) | MOTION FOR COMPASSIONATE |
| | ) | RELEASE |
| | ) | |
| vs. | ) | |
| | ) | |
| DEROY LAVATAI, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

**ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

**I.      INTRODUCTION.**

In 2013, Defendant Deroy Lavatai pled guilty to one count of conspiracy to distribute 50 grams or more of methamphetamine and a quantity of marijuana, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), 841(b)(1)(D), and 846.  In 2014, this court sentenced Lavatai to a mandatory minimum sentence of 20 years in prison.  In 2018, however, Congress amended 21 U.S.C. § 841 as part of the First Step Act.  Under today's law, Lavatai would face a mandatory minimum sentence of 15 years.

Lavatai now moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A).  The primary basis for his motion is the COVID-19 pandemic.  He contends that his underlying medical conditions (obesity and hypertension) make him vulnerable to complications if he contracts COVID-19.  Lavatai is housed at FCI Lompoc.  On May 4, 2020, he learned that he had tested positive

for COVID-19. The medical records do not report that he exhibited any symptoms. ECF No. 376. Now, more than two months later, this court cannot tell whether Lavatai is likely to suffer further complications, be reinfected, or have some form of immunity from the virus such that it does not pose an immediate threat to him. FCI Lompoc, which has had 825 inmates and 16 staff members "recover" from COVID-19, today identifies no active inmate cases and 2 active staff cases. With difficulty, this court balances all of these circumstances, including the significant time that would remain on Lavatai's sentence even if it were reduced to today's mandatory minimum, and concludes that Lavatai has not established extraordinary and compelling reasons that warrant a reduction in his sentence.

**II.     ANALYSIS.**

Lavatai's compassionate release request is governed by 18 U.S.C. § 3582(c)(1)(A), which provides:

> [T]he court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

> (i) extraordinary and compelling reasons warrant such a reduction . . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

In other words, for the court to exercise its authority under § 3582(c)(1)(A), it must (1) find that the defendant exhausted his administrative remedies or that 30 days have passed since he filed an administrative compassionate relief request; (2) also find, after considering the factors set forth in section 3553(a), that extraordinary and compelling reasons warrant a sentence reduction; and (3) find that such a reduction is consistent with the Sentencing Commission's policy statements. *United States v. Scher*, 2020 WL 3086234, at *2 (D. Haw. June 10, 2020).

### A. Lavatai has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A).

Lavatai submitted an administrative compassionate release request to the warden of his prison more than 30 days before filing this motion. *See* ECF No. 378, PageID # 1654. He has satisfied the time-lapse requirement of 18 U.S.C. § 3582(c)(1)(A). The Government is not contesting Lavatai's satisfaction of the exhaustion requirement. *Id.*

### B. Lavatai has not demonstrated that extraordinary and compelling circumstances justify his early release.

This court therefore turns to § 3582(c)(1)(A)'s second requirement: whether extraordinary and compelling reasons warrant

a sentence reduction.  In orders addressing compassionate release motions in other cases, this court has expressly recognized that it possesses considerable discretion in determining whether a particular defendant has established the existence of extraordinary and compelling reasons that justify early release. This court has stated that it reads § 3582(c)(1)(A) as allowing this court considerable discretion, notwithstanding the absence of an amended policy statement from the Sentencing Commission reflecting the discretion now given to courts under that statute. *See United States v. Scher,* 2020 WL 3086234, at *2 (D. Haw. June 10, 2020); *United States v. Cisneros*, 2020 WL 3065103, at *2 (D. Haw. Jun. 9, 2020); *United States v. Kamaka*, 2020 WL 2820139, at *3 (D. Haw. May 29, 2020).

        The CDC currently lists the following conditions as creating an increased risk of a severe illness from COVID-19:

    *Cancer

    *Chronic kidney disease

    *COPD (chronic obstructive pulmonary disease)

    *Immunocompromised state (weakened immune system) from solid organ transplant

    *Obesity (body mass index [BMI] of 30 or higher)

    *Serious heart conditions, such as heart failure, coronary artery disease, or cardiomyopathies

    *Sickle cell disease

    *Type 2 diabetes mellitus

```
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/
people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fw
ww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fg
roups-at-higher-risk.html
```
(last visited July 23, 2020).

The CDC also lists the following as possibly increasing the risk of a severe illness from COVID-19:

* Asthma (moderate-to-severe)

* Cerebrovascular disease (affects blood vessels and blood supply to the brain)

* Cystic fibrosis

* Hypertension or high blood pressure

* Immunocompromised state (weakened immune system) from blood or bone marrow transplant, immune deficiencies, HIV, use of corticosteroids, or use of other immune weakening medicines

* Neurologic conditions, such as dementia

* Liver disease

* Pregnancy

* Pulmonary fibrosis (having damaged or scarred lung tissues)

* Smoking

* Thalassemia (a type of blood disorder)

* Type 1 diabetes mellitus

*Id.*

Under the CDC's guidance, Lavatai's obesity and hypertension increase his risk of a severe illness if he contracts COVID-19.  Lavatai is housed at FCI Lompoc, where

5

COVID-19 is present. There is no dispute that, early in the COVID-19 pandemic, the virus spread rapidly through the prison, with 825 inmates and 16 staff members testing positive and two inmates dying. However, the number of active cases is now considerably reduced. As of today, there are no positive inmate tests and 2 positive staff tests. *See* www.bop.gov (last visited July 24, 2020). Whether that reduction is because many inmates now have immunity, because the facility is doing better at controlling the spread, or (of greater concern) because the facility is failing to detect new cases, this court at this point has a record that is less serious than it would have been earlier. The court nevertheless considers the serious history at FCI Lompoc and the possibility that Lavatai might continue to be exposed to COVID-19 and suffer serious complications.

There is some evidence in the record that suggests that risk might be mitigated. Most notably, Lavatai tested positive for COVID-19 on May 4, 2020, more than two months ago. ECF No. 228, PageID # 2527-29. That raises two issues. First, the medical records might suggest that he will not likely develop complications even if reinfected. There is no way for this court to know whether Lavatai's test was a false positive, but, if the test was accurate, it appears that Lavatai may have survived the virus without developing serious complications.

Second, based on the present record, this court cannot conclude that there is a substantial risk that Lavatai will be reinfected. Individuals infected by certain other viruses may have at least some immunity against future infection, although the strength and length of that immunity may vary. Lavatai, pointing to a New York Times article, asserts that there is some evidence that COVID-19 is different. In particular, he notes that a study showed that "the antibodies a person creates to combat COVID-19 may last only two or three months, which indicates that a person who already had COVID-19 may eventually get re-infected." ECF No. 373, PageID # 1580.

More recent articles, however, have indicated that individuals infected with COVID-19 are likely to remain immune even after their antibody count drops. As one article put it, "[a] decline in antibodies is normal after a few weeks, and people are protected from the coronavirus in other ways." Apoorva Mandavilli, *Can You Get COVID-19 Again? It's Very Unlikely, Experts Say*, N.Y. Times, July 22, 2020, https://www.nytimes.com/2020/07/22/health/covid-antibodies-herd-immunity.html; *see also* Derek Thompson, *How Long Does COVID-19 Immunity Last?*, The Atlantic, July 20, 2020, https://www.theatlantic.com/ideas/archive/2020/07/could-covid-19-immunity-really-disappear-months/614377/; Martin Finucane, *Here's What You Need To Know About Fading Coronavirus Antibodies*, Boston

Globe, July 23, 2020, https://www.bostonglobe.com/2020/07/23/nation/heres-what-you-need-know-about-fading-coronavirus-antibodies/.  Even after COVID-19 antibodies decline, the body might retain immunological memory that allows it to quickly produce new antibodies to respond to a second infection.  *See id*.  Some experts therefore posit that, at the very least, it is highly unlikely that individuals will contract the coronavirus twice.  *See id*.

This court is acutely aware that no one completely understands how the coronavirus operates.  This court is in no position to make a definitive determination about immunity, but the combination of Lavatai's lack of complications after testing positive and the possibility that he may have some form of immunity cannot be entirely ignored in any evaluation of whether there are extraordinary and compelling reasons warranting a reduction in his sentence.

The court also must consider the time remaining on Lavatai's sentence.  Lavatai has been in custody since January 10, 2013.  *See* ECF No. 378, PageID # 1659.  Even if credit for good behavior is taken into account, he still has many years left on his sentence.  Lavatai argues that this court should consider the impact of the First Step Act on that sentence.

This court has previously held that a change in the law may be a relevant consideration in determining whether

extraordinary and compelling circumstances justify a defendants' release, although this court has not held that it may be the sole consideration. *United States v. Cisneros*, 2020 WL 3065103, at *3-4 (D. Haw. June 9, 2020). Under § 3582(c)(1)(A), a court must consider whether a reduced sentence would reflect the seriousness of the defendant's offense, promote respect for the law, provide just punishment for the offense, or afford adequate deterrence to criminal conduct. 18 U.S.C. § 3582(c)(1)(A); 18 U.S.C. § 3553(a). The fact that a defendant would receive a reduced sentence if he was sentenced today could affect all of those considerations.

      Lavatai argues that, if he were sentenced today, his guideline range would be reduced from 240 months in prison to between 180 months and 210 months. ECF No. 379, PageID # 1674. While Lavatai would today face a 15-year mandatory minimum, he would not be guaranteed a 15-year sentence. Moreover, Lavatai has served about 90 months of his sentence, meaning that, even if he received a 180-month sentence, he would still have many years left to serve.

      The Government argues that Lavatai's criminal history and disciplinary record while in custody weigh against compassionate release. Lavatai was earlier convicted of distributing methamphetamine in 2003, and, almost immediately after his release from prison, he began dealing drugs again,

leading to his conviction in this case. *See* ECF No. 260, PageID # 990, 997. That suggests that there is some risk of recidivism. On the other hand, the majority of the disciplinary offenses while in custody cited by the Government predate 2013. ECF No. 378-1, PageID # 1662. Moreover, in the last six years, Lavatai has completed an impressive number of educational courses, and he has been consistently employed in prison. ECF No. 370-1. Thus, the record does include encouraging indications about Lavatai's commitment to his rehabilitation.

The court considers this a close case. But under § 3582(c)(1)(A), only extraordinary and compelling reasons can justify a reduction in an inmate's sentence. After considering Lavatai's medical conditions, positive COVID-19 test, and lack of COVID-19 symptoms, as well as the apparent improvement in the situation at FCI Lompoc, the time remaining on his sentence, and the impact of the First Step Act, this court concludes that it does not have an extraordinary and compelling reason to reduce Lavatai's sentence at this time. That does not mean that, in the future, Lavatai cannot bring another motion asking for compassionate release that might be based on his medical condition, the impact of the First Step Act, his continued rehabilitation, and other developments.

Lavatai argues that, even if this court does not order his immediate release, it should nevertheless reduce his sentence

to 180 months now because that is the sentence he says he would receive if sentenced today.  ECF No. 373, PageID # 1596-1597; ECF No. 379, PageID # 1675-78.  In support of that assertion, he cites two district court cases in which courts considered sentence reductions under § 3582(c)(1)(A) without ordering immediate release.  Neither *United States v. Maumau*, 2020 WL 806121, at *8 (D. Utah Feb. 18, 2020) nor *United States v. Urkevich*, 2019 WL 6037391, at *4 (D. Neb. Nov. 14, 2019), cited COVID-19 or any other imminent emergency.

In *Maumau*, the district court noted that the sentencing laws applicable to the defendant had changed after the defendant was sentenced, so that the defendant would not have been subject to the same harsh mandatory sentences if sentenced under new provisions.  The court was focused on the defendant's age, the length of the sentence imposed, and the changes in the law.  Concluding that it had the authority to provide relief to the defendant under the compassionate relief statute and that it should indeed provide relief, the court ordered the parties to appear at a hearing to discuss what that relief should be.  2020 WL 806121, at *1, 5.

In *Urkevich*, the district court, similarly faced with a change in the law, reduced the defendant's sentence without ordering immediate release.  The court noted that its order in advance of a new release date would help the defendant and the

11

prison plan for his release and assist the defendant in seeking clemency. 2019 WL 6037391, at *4.

This case, unlike *Maumau* and *Urkevich*, involves the primary argument that Lavatai should be released because of his vulnerability to COVID-19. This circumstance presents a marked difference from the circumstances in the cases Lavatai cites, because Lavatai is pointing to what he says is an emergency. In its *Cisneros* decision, this court has already stated that it views the compassionate release statute as allowing it to consider a change in the law as a factor in reducing a sentence. The problem with Lavatai's alternate argument, however, is an internal inconsistency. If the timing of Lavatai's present motion is driven by the threat of contracting COVID-19, it makes little sense for the court to order release at a date years in the future, when COVID-19 will presumably not be an issue. This court therefore declines to enter any order reducing Lavatai's sentence but setting a release date years into the future.

This court encourages Lavatai to bring another motion in the future. To avoid any misunderstanding, this court stresses that it is ruling that Lavatai has not shown entitlement to compassionate release at present. This court is confining this order to the present record and the present state of the law. The court is, however, not saying that it will never order compassionate release based at least in part on changes in

sentencing provisions.  While this court is not here committing to releasing Lavatai in the future on some different record, Lavatai can increase his chances of a favorable ruling by making a showing of further positive progress in his rehabilitative efforts.  Based on the present record, the court declines to release Lavatai under § 3582(c)(1)(A).

**III.    CONCLUSION.**

Lavatai's request for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied.

It is so ordered.

DATED: Honolulu, Hawaii, July 24, 2020.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*United States v. Lavatai*, Cr. No. 13-00021-SOM-2; ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE